IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EUGENE MCGOVERN, | CASE NO. 1:21-CV-1365 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Eugene McGovern ("Plaintiff" or "McGovern"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. PROCEDURAL HISTORY**

In March 2019, McGovern filed an application for SSI, alleging a disability onset date of May 12, 2014, and claiming he was disabled due to "L1-L4 no cartilage," no cartilage in knees, and heart murmur. Transcript ("Tr.") at 154, 178. The application was denied initially and upon reconsideration, and McGovern requested a hearing before an administrative law judge ("ALJ"). Tr. 131.

On July 23, 2020, an ALJ held a hearing, during which McGovern, represented by counsel, and an impartial vocational expert ("VE") testified. Tr. 41-58. On August 3, 2020, the ALJ issued a written

---
[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

decision finding that McGovern was not disabled. Tr. 22-36. The ALJ's decision became final on May 27, 2021, when the Appeals Council declined further review. Tr. 1-3.

On July 16, 2021, McGovern filed his Complaint to challenge the Commissioner's final decision. Doc. No. 1. The parties have completed briefing in this case. Doc. Nos. 7, 9. McGovern asserts the following assignment of error:

> Whether the administrative law judge's decision that plaintiff is not disabled at step 3 of the sequential evaluation is supported by substantial evidence.

Doc. No. 7, p. 1.

## II. EVIDENCE

**A.     Personal and Vocational Evidence**

McGovern was born in 1983 and was 35 years-old on the date he filed his application. Tr. 34. He has a limited education, is functionally illiterate, and has no past relevant work. Tr. 34.

**B.     Relevant Medical Evidence[2]**

School records showed that McGovern attended high school for two years, was in ninth grade both years, and earned a .162 grade point average. Tr. 176.

On February 9, 2007, when he was 23 years old, McGovern saw David House, Ph.D., for a consultative exam. Tr. 244-247. He reported going to up to 8th grade and described his grades as bad. Tr. 245. Despite his bad grades, they kept passing him and he did not repeat a grade. Tr. 245. He believed that he was in special education but was not sure "what it was." Tr. 245. He reported that he had spent 90 days in prison in 2006 and had been housed in a psychiatric unit there "because he had such major learning problems." Tr. 245-246. He stated that he was unable to read. Tr. 246. His sleep pattern was terrible and he had nightmares at times. Tr. 247. His appetite was also terrible, he was

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

2

depressed and had been for a long time, and sometimes he had crying spells. Tr. 247. He denied panic attacks but described himself as scared and stated that he had been raped when he was about 16 years old. Tr. 247. He had a history of trying to cut himself. Tr. 247. Upon exam, Dr. House commented that McGovern had reported his date of birth wrong and that his concentration and attention were at least markedly limited. Tr. 248. He was oriented to person and partially oriented to place and time. Tr. 248. His pace was very slow, persistence was poor, and he had difficulty completing tasks in an effective manner. Tr. 248. He could not perform a serial seven subtraction task or recall any of three objects after five minutes. Tr. 248. He did not know any current or prior presidents of the United States. Tr. 248. His insight into his current situation and overall level of judgment appeared to be at least moderately limited and he would require supervision in the management of his daily activities and handling financial affairs. Tr. 248. His daily activities included sometimes going to work with his mother and helping her clean there, watching television, and playing video games. Tr. 248. He did not cook because he almost burned the house down, and he cleaned if someone helped but he was unable to do laundry. Tr. 249. He did not grocery shop, drive, ride a bus, or manage money. Tr. 249.

Dr. House administered intelligence testing. McGovern's verbal IQ was 59, performance was 65, and full-scale IQ was 58, which placed him in the mentally retarded range of adult intellectual functioning. Tr. 249. Dr. House wrote that McGovern made an effort and that the results were valid. Tr. 249-250. He explained that McGovern is quite intellectually limited and stated that, if there was an indication that his IQ was higher at an earlier point in time, he would defer to that prior testing. Tr. 250. He wrote that his mother had stated that, at birth, McGovern's oxygen had been cut off, which, Dr. House opined, could have resulted in brain damage contributing to his intellectual limitations. Tr. 250. Dr. House diagnosed cognitive disorder, not otherwise specified, PTSD, bipolar disorder, and adult anti-social behavior. Tr. 251. He concluded that McGovern had at least a marked limitation in the ability to

maintain concentration and attention and a moderate limitation in the ability to understand and follow directions due to his problems with attention and concentration and his intellectual disability; he would have difficulty following directions beyond a couple of steps on any consistent basis. Tr. 251. His ability to withstand stress and pressure was at least moderately limited due to his emotional conditions and his ability to relate to others in the general public was at least moderately limited. Tr. 251. His level of adaptability was markedly limited and his condition was "chronic and not treatable, at least regarding cognitive issues." Tr. 251.

On April 15, 2019, McGovern saw Victoria Liao, Psy.D., for a consultative exam. Tr. 359-364. McGovern reported that his highest level of education was the 9th grade and that he left because he was 18 years old. Tr. 360. He was in special education classes and repeated numerous grades but was unsure which grades. Tr. 360. He reported having worked as a dishwasher for a couple of months, but he quit because he could not keep up. Tr. 360. Upon exam, he was fully oriented, had unremarkable speech and thought process, and a flat affect and euthymic mood. Tr. 361. He could count but was unable to complete serial 7s or serial 3s or do simple mathematical calculations. Tr. 361. He could recall 3/3 objects immediately and after a time delay. Tr. 361-362. He knew who the current and previous presidents were. Tr. 362. His insight and judgment were fair and his general fund of information was below the level appropriate to experience. Tr. 362. Dr. Liao remarked that McGovern's intellectual functioning appeared to be in the low range based on prior reports, self-report, and behavioral observations. Tr. 362. McGovern indicated that his activities of daily living were impacted by his cognitive symptoms, to wit, he needed assistance shopping and cooking and he was unable to manage money. Tr. 362. Dr. Liao diagnosed mild intellectual disability and stated that his prognosis was fair. Tr. 362. She concluded that his cognitive deficits impacted his functioning; his attention and concentration for both simple and complex tasks was impaired and his recent and remote

memory skills were intact. Tr. 363. Accordingly, she opined that he had limitations in his ability to understand, remember and carry out instructions, maintain attention, concentration, persistence and pace to perform simple and complex tasks, respond appropriately to supervisors and co-workers, and to respond appropriately to work pressures in a work setting. Tr. 364.

At a medical appointment in May 2019, McGovern had normal memory and concentration upon exam. Tr. 370.

**C.     State Agency Reports**

On May 2, 2019, Robyn Murry-Hoffman, Ph.D., reviewed McGovern's record and evaluated his impairment under Listing 12.05, Intellectual disorder. Tr. 88. She opined that he had moderate limitations in understanding, remembering and applying information; interacting with others; concentrating, persistence and maintaining pace; and adapting or managing oneself. Tr. 88. Regarding his RFC assessment, McGovern could perform simple, repetitive, 1-3 step tasks without fast pace or high production demands, have occasional contact with the general public and superficial contact with coworkers and supervisors, and work in an environment with fairly static job duties. Tr. 92-94. On October 30, 2019, Kristen Haskins, Psy.D, adopted Dr. Hoffman's opinion and also included an RFC limitation that McGovern should be allowed time to adjust to new expectations. Tr. 104-105, 108-110.

**D.     Hearing Testimony**

During the July 23, 2020 hearing, McGovern testified to the following:

- When asked why he is unable to work, he stated that he has no cartilage in his knees or back and that he can't read or write. Tr. 45-46. The farthest he went in school was 8th grade. Tr. 46. If he had to do a subtraction problem he would have to figure it out or ask someone. Tr. 46. When asked if he would have to use a calculator, he agreed. Tr. 46.

- He agreed that he had problems focusing. Tr. 46-47. He lives with his mother; his mother does the household chores and he helps sweep and mop if he can, due to his physical impairments. Tr. 47. If his mother gives him instructions about helping her or doing a project she has to repeat herself. Tr. 48. He doesn't like interacting with people. Tr. 48. He isolates himself in his bedroom every day. Tr. 48. He has been receiving mental health

5

treatment for the past 3-4 months and it was helping a little bit. Tr. 48-49. When asked if he could focus watching television he stated that he could watch television for about 30 minutes. Tr. 49.

- He enjoys working on cars, and he has worked on cars for money in the past. Tr. 45, 49. He changed brakes or engine oil, etc., in his backyard. Tr. 50. He knows how to do those things; his father taught him. Tr. 50. When asked what prevented him from getting a job working on cars, he stated that he is afraid people will find out he can't read or write and "I just choose not to work because I'm scared." Tr. 49. He is seeking treatment for anxiety. Tr. 50. When asked if he could perform a desk job, he said that he could not if there were people around because he would think that they were talking about him. Tr. 50. He has hallucinations for which he takes medication. Tr. 50.

- He knows how to drive but he is unable to get a driver's license because he can't get past the paperwork because he can't read. Tr. 51. He tried to take the test verbally but he didn't understand the questions they asked him. Tr. 51. His mother, father, or brother will drive him places. Tr. 52.

The ALJ found that McGovern had no past relevant work and asked the VE whether a hypothetical individual with the same age and education as McGovern, who is functionally illiterate, could perform any work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 53-54. The VE answered that such an individual could perform the following representative jobs in the economy: cleaner, sorter, and palletizer. Tr. 54. When asked about the permitted off-task and absenteeism rate in the workplace, the VE stated that an individual could not be off-task more than 20% of the day or absent more than once per month or 10 times in the course of a year. Tr. 56.

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594

6

F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 18, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: intellectual disorder with functional illiteracy, and degenerative changes of the lumbosacral spine (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR

       416.967(b), except for no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that he perform simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes) that do not require reading or writing, and that involve superficial interpersonal interactions with coworkers, supervisors and the public (no arbitration, negotiation, or confrontation) (20 CFR 416.969a).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July **, 1983 and was 35 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is functionally illiterate (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 18, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 24-35.

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's

8

findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012

WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

McGovern argues that the ALJ erred at step three when he found that McGovern did not satisfy the criteria of Listing 12.05(B), Intellectual disorder. Doc. No. 7, pp. 7-9. To satisfy Listing 12.05(B), a claimant must have:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> a. Understand, remember, or apply information (see 12.00E1); or
>> b. Interact with others (see 12.00E2); or
>> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that McGovern satisfied Listing 12.05(B)(1) but did not satisfy 12.05(B)(2) because he had a moderate limitation in all four areas of mental functioning. Tr. 26-27. McGovern challenges the ALJ's finding that he had a moderate limitation in two areas: understanding, remembering, and applying information and adapting and managing oneself. Doc. No. 7, pp. 9-11.

With respect to adapting and managing oneself, that area of functioning "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting," including, but not limited to, maintaining personal hygiene and appropriate dress and adapting to changes. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00E4. In support of his assertion that he had more than a moderate limitation adapting and managing himself, McGovern cites his IQ scores, his poor performance in school and his assertion that he was in special education classes, and the fact that he left school when he was 15 years old. Doc. No. 7, pp. 9-10. As an initial matter, the record shows that McGovern attended school as a 17-year-old (Tr. 176) and he told Dr. Liao that he left school when he was 18 (Tr. 360). Regardless, McGovern does not explain how his IQ score and poor school performance is relevant to his ability to adapt and manage himself. Although recent school records can be evidence relevant to adaptive functioning, see 12.05(H)(3)(b)(iv), McGovern's school records are not recent and they don't shed any light on his adaptive abilities. The only school records are a grade 9 transcript from 1999-2001 and a request for records that was left blank by the school. Tr. 174-176.

Moreover, the ALJ observed that McGovern told Dr. House that he left school because it didn't help and he was being teased; the ALJ commented that, to the extent McGovern reported depression and anxiety, they were "not at clinically significant levels" and McGovern was only claiming disability for intellectual functioning, Tr. 26, 29, a finding that McGovern does not challenge. In short, McGovern has not shown that his poor performance at school was due to marked limitations in adapting and managing himself.

McGovern challenges the ALJ's statement that prior testing showed higher intelligence scoring and asserts that there is no evidence in the record indicating higher IQ scoring. Doc. No. 7, p. 10. But the state agency reviewers referenced testing from 2006 when McGovern was in prison: a GAMA screen of 75 and a TONI-3 nonverbal test of intelligence score of 72, as the ALJ observed. Tr. 26, Tr.

94. See also Tr. 250 (Dr. House commenting, "If there is an indication that his I.Q. was higher at an earlier point in time, the evaluator would defer to previous testing.").

Finally, the ALJ found that McGovern had a moderate limitation in adapting and managing himself based on evidence that he was able to dress, bathe, and feed himself. Tr. 26. The ALJ noted that his fiancée helped with cooking and shopping and that he was unable to manage money. Tr. 26. He spent his days with his children playing with them, playing on the phone, and watching television, and he had positive familial relationships and minimal socialization with others. Tr. 26. McGovern argues that the fact that he needs assistance with shopping, cooking, and managing money supports a finding that he had a marked limitation. Doc. No. 7, p. 11. But the ALJ disagreed, and McGovern does not show that his conclusion was error. He cites to Dr. Liao's opinion in support, but Dr. Liao found that McGovern had a mild intellectual disability that caused "limitations" and did not express them in functional terms, as the ALJ observed. Tr. 33. And while Dr. House found that he had a marked limitation in adaptability, the ALJ did not find that opinion persuasive because it was old, Tr. 33, a finding that McGovern also does not challenge.[3]

Thus, the Court finds that McGovern has not shown that the ALJ erred when he found that McGovern had a moderate limitation in his ability to adapt and manage himself. *See Thacker v. Soc. Sec. Admin.*, 93 Fed. App'x 725, 727-728 (6th Cir. 2004) (The claimant bears the burden of establishing that his condition meets or equals a listing, citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)).

Next, McGovern argues that he had a marked limitation in understanding, applying, and using information. Doc. No. 7, p. 10. In support, he relies upon Dr. House's opinion, but Dr. House found

---

[3] McGovern argues that the ALJ's statement that Dr. House's test scores may have been lower due to McGovern's PTSD symptoms at that time was not a position endorsed by Dr. House. Doc. No. 7, p. 10. But Dr. House did find that McGovern was more limited in some areas due to his emotional conditions and indicated that he would defer to prior testing, if any, showing a higher IQ. Tr. 250-251.

that he had a moderate impairment understanding and following directions. Tr. 251. Thus, Dr. House's opinion does not provide support for McGovern's argument. McGovern points out that Dr. House found that he would have difficulty following directions beyond a couple of steps on any consistent basis, but that does not mean McGovern had a marked impairment in understanding, remembering and applying information. McGovern's reliance upon Dr. Liao's opinion also fails; Dr. Liao found that McGovern had "limitations" in understanding, remembering, and carrying out instructions, which does not support "marked" limitations. Tr. 363. Moreover, Dr. Liao stated that McGovern had a mild intellectual disability and intact recent and remote memory. Tr. 363. Thus, the Court finds that McGovern has not shown that the ALJ erred when he found that McGovern had a moderate limitation in his ability to understand, apply, and use information. *Thacker*, 93 Fed. App'x at 727-728. Accordingly, his claim that the ALJ erred at step three is without merit.

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: April 21, 2022

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge